III.    **THE COURT SHOULD CERTIFY THE CLASS IN THIS CASE**

A.    **Rule 23 Favors Certification**

The Supreme Court has noted that "[c]lass action serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). The Court has also recognized that the class action procedure is necessary for private rights of action to be initiated. *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, *reh'g denied*, 446 U.S. 947 (1980). As stated in *Roper*, class actions permit plaintiffs to "vindicat[e] the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost." *Id.* at 338.

The determinations called for by Rule 23 are questions addressed to the sound discretion of the district court. *Gulf Oil Co.*, 452 U.S. at 100. While a decision to grant class certification is not a final order and may be altered or amended as the case progresses toward resolution on the merits, the district court must include in class certification orders a clear and complete summary of the claims, issues or defenses subject to class treatment. *Wachtel v. Guardian Life Ins. Co. of America*, 453 F.3d 179, 184-85 (3d Cir. 2006). Although the court must engage in a "rigorous analysis," the Third Circuit has also made clear that that the court should adopt a liberal construct of Rule 23. *Eisenberg v. Ganon*, 766 F.2d 770, 785 (3d Cir. 1985). In doubtful cases, any error should be committed in favor of allowing class certification. *Id.* The reason to favor class certification is that class action lawsuits are **essential**, and often the only practical way, to enforce consumer protection laws:

> In a large and impersonal society, class actions are often the last barricade of consumer protection . . . . To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action -- private suits or governmental actions – have been

> so often found wanting in controlling consumer frauds that not even the ardent
> critics of class actions seriously contend that they are not truly effective. The
> consumer class action, when brought by those who have no other avenue of legal
> redress, provides restitution to the injured, and deterrence of the wrongdoer.

*Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill. App. 3d 995, 574 N.E. 2d 760, 764 (Ill. 1991).

Simple consumer cases such as this one are routinely certified as class actions by courts in Pennsylvania and elsewhere. The United States Supreme Court has noted that cases involving consumer or securities fraud or violations of anti-trust laws are especially appropriate for class action treatment. *Amchem Product, Inc. v. Windsor,* 521 U.S. 591, 625 (1997). *See also Mitchell-Tracey*, 237 F.R.D. at 555 (*citing Deposit Guaranty Nat' Bank of Jackson v. Ropert,* 445 U.S. 326, 339, (1997)) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device.").

This Court should find that the allegations against Chicago Title – involving uniform overcharges in connection with the issuance of title insurance – raise questions that can and should be resolved, once and for all, in a class action. In deciding this issue, the court should not conduct an exploration into the merits of the plaintiff's case. *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 177-78 (1974). Rather, the court "is bound to take the substantive allegations of the complaint as true." *Goldman v. Radioshack*, 2005 U.S. Dist. Lexis 8742 at *13 (*quoting Cullen v. Whitman Med. Corp.* 188 F.R.D. 226, 228 (E.D. Pa. 1999)). In this instance, the legal and factual issues which will control resolution of this case for the Plaintiff and for all Class members are relatively simple and straightforward and support certification of the Class.

**B.    Legal Requirements for Certification**

Under Rule 23, one or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if:

(1)    the class is so *numerous* that joinder of all members is impracticable;

(2)    there are questions of law or fact *common* to the class;

(3)    the claims or defenses of the representative parties are *typical* of the claims or defenses of the class;

(4)    the representative parties will fairly and *adequately* assert and protect the interests of the class.

For the reasons set forth below, the proposed Class meets all of these criteria and therefore this matter should be certified.

### 1.    <u>Numerosity</u>

The focus of the numerosity requirement of Rule 23 is judicial economy. The Rule does not set out a precise numerical standard, but presents an impracticability of joinder requirement, of which class size is an inherent consideration. 1 H. Newberg and A. Conte, NEWBERG ON CLASS ACTIONS, § 3:5 (4th ed. 2003). *Weiss v. York Hospital,* 745 F.2d 786, 808, n. 5 (3rd Cir. 1984) (92 class members meets certification requirement). *Brooks v. Educators Mut. Life Ins. Co.* 206 F.R.D. 96, 101 (E.D. Pa. 2002), *citing Stewart v. Abraham*, 275 F.3d 220, 227-28 (3d Cir. 2001) (forty people generally satisfies the numerosity requirement).

As noted above, the Defendant issued thousands of title insurance policies in Pennsylvania during the class period, and collected premiums in at least 157,718 transactions over the relevant class period in an amount ***in excess of $193,450,144.***    Exhibits K-Q. Moreover, Chicago Title admits that due to declining interest rates during the last five years, the United States real estate market has seen a large number of refinancing transactions where a homeowner refinanced their home multiple times within this five year period. Ray Dep. at 91-2. Thus, even though we do not know the exact number of consumers who were entitled to the Reissue Rate or the Refinance Rate, but were instead charged a higher rate, the records produced

to date show that thousands of consumers were denied the discounted rate they were entitled to receive. Moreover, even a cursory examination of the limited data provided by Chicago Title to date reveals that the vast preponderance of consumers clearly eligible to receive the discounted Reissue Rate, have not received the rate at all. Exhibits K-Q.

In this circumstance, the numerosity prong of Rule 23 is satisfied. As Professor Newberg notes:

> The numerosity requirement is met when plaintiffs demonstrate that the number of potential class members is large, even if plaintiffs do not know the exact figure. Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.

1 NEWBERG ON CLASS ACTIONS § 3:3 (4th ed. 2004). This court may make common sense assumptions in order to support the finding of numerosity. *Snider v. Upjohn Co.*, 115 F.R.D. 536, 539 (E.D. Pa. 1987).

### 2. **Commonality of Issues**

Rule 23(a)(2) requires only that there be a single common question of law **or** fact in order for the court to certify the class action. This case raises numerous questions of both law and fact which are common to the class. The common issues include, but are not limited, to the following:

(a) Whether the Defendant and its agents systematically collected premiums from Class members in amounts not permitted under the Rate Manual;

(b) Whether by filing their discounted rates with the Commonwealth of Pennsylvania, the Defendant is offering insurance at a certain price and that the Class is entitled to receive that price;

(c) Whether the Defendant's protocols, guidelines and oversight of its agents precluded the Class from receiving the discounted, filed rates to which they were entitled;

(d) Whether the Defendant uniformly applied the discounted rates pursuant to the terms of filed rates;

(e)    Whether the Defendant and its agents intentionally and/or negligently omitted to disclose material facts to the Plaintiff and the Class that they need only pay the discounted premiums for the reissuance of title insurance on the refinancing of their mortgages or fee interests;

(f)    Whether the Defendant and its agents were unjustly enriched by their improper conduct;

(g)    Whether the Defendant and its agents should be enjoined from further engaging in such improper conduct;

(h)    Whether the Plaintiff and members of the Class have suffered an ascertainable loss that is the result of the Defendant's misconduct and unfair and deceptive business practices; and

(i)    Whether Plaintiff and members of the Class have sustained damages and the proper measure of such damages.

It is important to note that the "threshold for satisfying commonality as well as typicality is not high." *Brooks*, 206 F.R.D. at 101. In fact, a **single** common question has been deemed sufficient to satisfy the commonality requirement. *Johnston v. HBO Film Management, Inc.* 265 F.3d 178, 184 (3d Cir. 2001); *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Factual differences among class members' cases will not preclude certification. *Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985)(certifying securities fraud class action despite differences in injuries); *Troutman v. Cohen*, 661 F. Supp. 802, 811 (E.D. Pa. 1987) (certifying class of nursing home patients challenging reductions in their level of nursing care designations over typicality and commonality objections "because it is not the unique fact of the individual appeals which give rise to this action, but rather the decision making process.")

The pertinent factual and legal issues in this case clearly are common to the Class. Here, the scope of the central question pertinent to the Class members – whether the Class members were entitled to the discounted, filed rates of the Defendant – is identical in all material respects. Also identical is the fact that the Defendant's stated protocols and written guidelines, and lack of

28

oversight of its agents' activities, precluded the Class from receiving the discounted rates. Likewise, the inquiry in this case will focus on standardized forms that are not only uniform in respect of the Defendant's operations, but are consistent throughout the title insurance industry. Finally, Plaintiff notes that the assessment of damages in this case is a straightforward mathematical calculation. Chicago Title's agent could not have been more emphatic on this point, agreeing that the calculation of rates is "a matter of simple mathematical calculation," or "just looking it up on a chart." Rozniakowski Dep. at 78-79; *see* Ray Dep. at 9, 84, 124.

Legal and factual questions will be viewed as commonly shared so long as "their resolution does not depend on the facts of any class member's particular claims, but depends rather on the evidence presented taken as a whole." *Baby Neal v. Casey*, 43 F.3d at 56-57 (challenges based on alleged violations of statutory standards are considered common). The practices alleged in this case were uniformly applied through form-driven settlement procedures. These forms were supplied by Chicago Title to its appointed agents, and did not vary from one borrower to another. Thus, in regard to the Class claims, no extraordinary facts existed in the individual Plaintiff's experience.

The law is well settled that cases which involve allegations arising from form contracts or documents "present the classic case for treatment as a class action." *Robinson v. Countrywide Credit Indus.*, 1997 WL 634502 * 3 (E.D. Pa. Oct. 8, 1997). *See also Myer v. CUNA Mutual Group*, 2006 U.S. Dist. LEXIS 4478, * 49-50 (W.D. Pa. 1996) (commonality found on interpretation of standard contract language). *Zeno v. Ford Motor Company*, 2006 U.S. Dist. LEXIS 69957 * 39-40 (W.D. Pa. 1996) (commonality predicated on whether defendant breached contractual duty to plaintiff).

The requirement of commonality is satisfied where, despite some minor factual

differences, the question of law linking the class is substantially related to the resolution of the litigation (*i.e.*, all class members' rights were violated and relief should be awarded). *Himmler v. Weinberger*, 422 F. Supp. 196, 199 (E.D. Mich. 1976), *rev'd on other grounds*, 611 F.2d 137 (6th Cir. 1979), *citing American Finance System, Inc. v. Harlow*, 65 F.R.D. 94, 107 (D. Md. 1974); *Harris v. Palm Springs Alpine Estates*, 329 F.2d 909 (9th Cir. 1964). In *American Finance System, Inc. v. Harlow*, for example, several different subclasses with widely varied factual circumstances in relation to contract and period of employment brought a Title VII suit. However, because the resolution of all claims depends on the resolution of unified legal questions, the requirement of commonality was satisfied. In the present case, not only are factual differences slight and irrelevant to the claims, uniform questions of law determine whether relief will be granted. The requirement of commonality is satisfied.

### 3.    Typicality of Claims

Each Class member's claim is typical.

> Commentators have noted that cases challenging **the same unlawful conduct** which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement **irrespective of the varying fact patterns underlying the individual claims** . . . . Actions requesting declaratory and injunctive relief to remedy conduct directed at the class clearly fit this mold.

> [F]actual differences will not render a claim atypical if the claim arises from the **same event or practice or course of conduct** that gives rise to the claims of the class members, and if it is **based on the same legal theory** . . . . Indeed, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories. Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice . . . .

*Baby Neal*, 43 F.3d at 58 (internal citations and quotations omitted, emphasis added).

The facts underlying Ms. Cohen's transactions are as straightforward as they are typical. Prior to the title insurance transactions at issue in this case, Ms. Cohen had – within the previous

3 years – refinanced her home in a transaction that resulted in the issuance of a valid title insurance policy.  Because of the Defendant's stated protocols and written guidelines and the lack of oversight of its agents' activities, the Plaintiff failed to receive or even be offered the Refinance Rate – a full 28% discount – when she refinanced.  Like all Class members, Ms. Cohen was legally entitled to the applicable discount under Defendant's filed rates with the Commonwealth of Pennsylvania.  Like all of the Class members, however, the Plaintiff did not receive the rate.  The very legal issues raised in the Complaint are demonstrated through the Plaintiff's transactions.  Importantly, the typicality requirement is met even where there may be different factual underpinnings (such as the size of the loan, the lender, or the location of the insured's property within Pennsylvania) of the claims of the various class members.  As held by the Third Circuit in *In Re Prudential Insurance Company America Sales Practices Litigation Agent Actions*, 148 F.3d 283 (3d Cir. 1998), where the named plaintiffs, as well as members of the proposed class, all have overarching claims arising from the same fraudulent scheme, the typicality requirement is satisfied regardless of whether different facts underlie each class member's claim. *Prudential*, 148 F.3d at 311-312. *See also, Hanrahan v. Britt*, 174 F.R.D. 356 (E.D. Pa. 1997) (typicality established where claims of all class members are based on the same systematic conduct and legal theories). *See e.g., Grasty v. Amalgamated Clothing and Textile Wkrs. Union*, 828 F.2d 123, 130 (3d Cir. 1987) (citing 1 NEWBERG, CLASS ACTIONS, § 3.15) (even when there are actual differences between the representative parties and the rest of the class, a proposed class will meet Rule 23(a)(3) requirements if "the claim arises from the same events or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory."). *See also Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988) ("Rule 23 does not require that the representative plaintiffs have endured precisely the same

31

injuries that have been sustained by class members, only that the harm complained of be common to the class." *Hassine*, 846 F.2d at 177 (emphasis omitted).

In this case, Plaintiff's claims present virtually identical fact patterns and legal theories which each Class member would have to present if he or she filed an individual suit. The claim of every Class member is based upon the same conduct by Chicago Title. The Plaintiff's claims are, therefore, not only typical of the claims of the Class, they are virtually identical to them.

### 4.    Adequacy of Representation

The standards of Rule 23(a)(4) are met if it appears that the named plaintiffs' interests are not antagonistic to those of other class members and that the plaintiffs' attorneys are qualified, experienced, and generally able to conduct the litigation. *Baby Neal,* 43 F.3d at 55. The requirement of adequate representation is not a search for a perfect plaintiff with an unassailable claim. The requirement merely assures that absent class members, who will be bound by the result, are protected by a vigorous and competent prosecution of the case by someone who shares their interests. *See* 1 NEWBERG ON CLASS ACTIONS, § 3:21 (4th ed. 2004). Ms. Cohen, as demonstrated by her own deposition and answers to interrogatories, clearly possesses such qualities and more. Moreover, Ms. Cohen has no claim or interest that conflicts with those of the Class. She has followed this case diligently and has already given her deposition and produced requested documents. Furthermore, any doubts about adequate representation or potential conflicts should be resolved in favor of upholding the class. *Zeno v. Ford Motor Company*, U.S. Dist. LEXIS 69957 at * 50.

Plaintiff and the Class in this case are represented by competent and experienced counsel who have represented numerous classes in actions involving consumer frauds and other legal violations. Generally, until the contrary is demonstrated, courts will assume that members of the

bar are skilled in their profession and the presumption fairly arises that all members of the bar in good standing are competent. *Id.* at * 49 (*citing* 3 NEWBERG ON CLASS ACTIONS, § 7:24 (4th ed. 2002)).  As previously set forth in the Motion for the Interim Appointment of Class Counsel and accompanying Declarations of counsel, each of the Plaintiff's counsel in this litigation has a local and national reputation for excellence in class litigation. Richard S. Gordon has served as counsel, and often lead counsel in more than 20 class actions, including cases in this Court. Similarly, Philip S. Friedman has served as lead class counsel in more than a dozen class actions throughout the country, and actually teaches CLE courses on class action rules.   Likewise, Michael D. Donovan and David A. Searles have substantial experience in consumer class action litigation.  A detailed description of counsel's experience was previously submitted in Plaintiff's Motion for Interim Appointment of Class Counsel.

Additionally, counsel is advancing the costs of the litigation as they have done in virtually every class action they have prosecuted. Indeed, initial funding by the class representative's attorney is not uncommon in class suits, nor is it barred by the Code of Professional Responsibility. *Janicik v. Prudential Ins. Co.*, 305 Pa. Super. 120, 137-38, 451 A.2d 451, 459 (Pa. Super. 1982).  To suggest otherwise "would limit the class action to wealthy litigations, contrary to its purposes." *Id.*

### 5.    A Class Action Is Appropriate Because the Criteria of Rule 23(b) Are Satisfied

After finding that all four requirements of Rule 23(a) have been met, the Court should certify the case as a class action *if any* one of three criteria in part (b) of the Rule is satisfied.  All three criteria are satisfied in this case.

### a.    Rule 23(b)(1)

Where, as here, the "causes of action brought by the named Plaintiffs on behalf of all class members are based on an alleged pattern of repeated behavior by the Defendants and can be most effectively adjudicated by a class action so as to avoid inconsistent outcomes," certification under Rule 23(b)(1) is appropriate. *Mitchell-Tracey, supra* (certifying 23(b)(1) class in action seeking disgorgement of excessive premiums charged by title insurers who failed to provide consumers with the discounted, filed rate). This class action is certainly appropriate for certification under Rule 23(b)(1). *Piper v. Portnoff Law Associates*, 215 F.R.D. 495, 503 (E.D. Pa. 2003); *Parks v. Portnoff Law Associates, Ltd.*, 210 F.R.D. 146, 152 (E.D. Pa. 2002).

Here, the causes of action brought by the Plaintiffs form the necessary backdrop to certify this as a 23(b)(1) class action.[8] Each of the causes of action brought by the Plaintiffs seeks to enforce duties and obligations owed the members of the class in common, collectively and indivisibly. Consequently, inconsistent or varying adjudication of claims to enforce those duties or obligations with respect to individual members of the class would establish incompatible standards of conduct for the defendant [Rule 23 (b)(1)(A)]; and adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. [Rule 23(b)(1)(B)]. *See DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, (8th Cir. 1995) (where claims of individual plaintiffs would essentially determine liability, a (b)(1) certification is appropriate against a bank for over escrowing accounts); *Cass Clay Inc. v.*

---

[8]    A Rule 23(b)(1) class action is maintainable if:
(1)    The prosecution of separate actions by or against individual members of the class would create a risk of
(A)    inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(B)    adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

*Northwestern Public Service Co.*, 63 F.R.D. 34, 36-37 (D.S.D. 1974) (23(b)(1) requirements met in action against utility company for overcharging customers where distribution of overcharges to customers would come from one fund).

Whether the cause of action is predicated on the issue of whether the Defendant failed to provide the tarriffed discounted rates to Class members is impermissible as a matter of Pennsylvania common law or the fact remains that each action is a claim for a breach of an integrated duty owed by the Defendants to their individual customers, this cause of action is certifiable as a Rule 23(b)(1) class. Each cause of action is objective in nature and is the same claim no matter which customer pursues the claim. Each claim is not particularized or differentiated by the peculiar or personal characteristics of any class member. Simply stated, either the Defendant's actions are in violation of the law, or they are not. *See Zachary v. Chase Manhattan Bank*, 52 F.R.D. 532, 534 (S.D.N.Y. 1971) (action against bank for collecting finance charges in excess of the legal rate certified as (b)(1) action since as a practical matter an individual action would be dispositive of claims of the class as a whole). If the acts of the Defendant do violate the law, then the identical cause of action exists in favor of all the persons to whom the conduct is directed.

b.    **Rule 23(b)(2)**

Chicago Title has uniformly and consistently violated Class members' rights in charging and collecting title insurance premiums in excess of the rate permitted by the law and in violation of their own Filed Rates. Class Plaintiffs seek equitable relief in the form of restitution and disgorgement on behalf of Class members and an injunction against any such activity in the future. Section (b)(2) of the Rule states that a class action is maintainable where:

> the party opposing the class has acted or refused to act on grounds generally
> applicable to the class thereby making appropriate final injunctive relief or

corresponding declaratory relief with respect to the class as a whole . . . .

*See also George v. Baltimore City Public Schools*, 117 F.R.D. 368, 372 (D. Md. 1987); *Williams v. Empire Funding Corp*, 183 F.R.D. 428, 436 n.14 (E.D. Pa. 1998). What is necessary for certification under part (b)(2) is that the challenged conduct by the defendant be premised on a ground that is applicable to the entire class. *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669 (M.D. Ill. 1989).

In this case, Plaintiff alleges that Defendant engaged in a scheme to cheat and deceive borrowers that resulted in higher title insurance premiums. Through the use of standard contract forms and standard corporate practices, Defendant acted on grounds applicable to the Class as a whole.

Rule 23(b)(2) is appropriate here even though Plaintiff and the Class seek statutory damages and other monetary relief against the Defendant. A Rule 23(b)(2) class should be certified to pursue class-wide injunctive relief "even where Plaintiffs seek [monetary] damages, as long as injunctive relief is additionally appropriate." *Williams v. Lane*, 129 F.R.D. 636 (N.D. Ill. 1990). In fact, the Court should approve a Rule 23(b)(2) class in this case because Plaintiff's claim for an injunction for the Class provides the structural basis for which the other claims are presented.[9] In this regard, Plaintiff reiterates that the Complaint in this case alleges that Defendant acted in contravention of the requirements of their own filed rates. Accordingly, the

---

[9]       In *Barabin v. Aramark Corporation*, 2003 WL 355417 at *1-2 (3d Cir. Jan. 24, 2003)(quoting *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 415 (5th Cir. 1998)), the Third Circuit held that a Rule 23(b)(2) class can only be certified when the monetary "damages claim is incidental to the primary claim for injunctive or declaratory relief . . . . Incidental damages are those 'that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief.'" Similarly, in the case at bar, Plaintiff primarily seeks to end a continuing practice that has harmed every Class member in the same respect and to disgorge ill gained profits from Chicago Title using objective standards and the Defendant's own papers. Accordingly, since the structural basis for which this claim was filed has everything to do with this injunctive and/or declaratory relief, the monetary relief requested should be considered "incidental," and a Rule 23 (b)(2) class is appropriate.

equitable relief sought by Plaintiff and the Class goes to the essence of this case. The fact that the named Plaintiff seeks repayment of the overcharge, does not exclude this case from treatment under subsection (b)(2), because the relief sought by Plaintiff does not relate exclusively or predominately to monetary damages and the injunctive relief sought is just as if not even more important than the monetary relief requested. *Mitchell-Tracey,* 237 F.R.D. at 559 (stating that "[a]ll that is necessary is that the class request "*restitution* on behalf of the class members and an injunction against any such activity in the future" (emphasis in original)), *citing Ramirez v. Webb,* 102 F.R.D. 968, 971 (W.D. Mich. 1984). *See also In re Visa Check/Mastermoney Antitrust Lit.,* 192 F.R.D. 68, 88-9 (E.D.N.Y. 2000)(certifying a class action under Rule 23(b)(2) and (b)(3) because even though the plaintiffs sought substantial monetary damages, the plaintiffs also requested "highly significant injunctive relief"), *aff'd,* 280 F.3d 124 (2d Cir. 2001); *In re Universal Service Fund Telephone Billing Practices Litigation,* 219 F.R.D. 661 (D. Kan. 2004)(holding that where both the monetary damages and injunctive relief sought are significant the court can certify class under Rule 23(b)(2) and (b)(3) at the same time).

### c.    Rule 23(b)(3)

Class certification is also appropriate under part (b)(3) because the most important issues in this case, both factually and legally, are predominantly common to the Class. For individual borrowers who were denied the filed rate discount – whose damages vary from a few dollars to several hundred dollars – there is little to gain by way of individual suits for damages, making class action adjudication the only practical way in which the consumers can obtain relief against Chicago Title. This is the situation addressed by Rule 23(b)(3), which states that a class action is maintainable where:

> The court finds that questions of law or fact common to the members of the class dominate over any questions affecting only individual members and that a class

action is superior to the other available methods for the fair and efficient adjudication of the controversy.

It is black letter law that in determining whether common issues predominate, the Court's inquiry should be directed primarily toward the issue of liability. *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977); *see also Snider v. Upjohn*, 115 F.R.D. at 541; *In re Sugar Industry Antitrust Litigation*, 73 F.R.D. 322, 345 (E.D. Pa. 1976).

This case focuses on the uniform and consistent practice of the Defendant's collection of title insurance premiums from Class members in amounts that are not permitted under the Pennsylvania Title Insurance Companies Act. It also focuses on whether the Defendant's protocols, guidelines and oversight of their agents, precluded the Class from receiving the Reissue Rate discounts to which they were entitled. These practices give rise to common issues of law and fact which predominate over any possible individual issues in this case.

As the United States Supreme Court recognized in *Amchem*:

> Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.

521 U.S. at 625. In fact, as noted above, the common questions of law and fact are virtually the *only* issues in this case. In *Goldman v. Radioshack Corp.*, 2005 U.S. Dist. LEXIS 8742, the court, in certifying an employment case under the Fair Labor Standards Act wrote that in determining the predominance and superiority prongs of Rule 23(b)(3), there is a non-exhaustive list of factors the court shall consider, including:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

*Id.* at *2.

Based upon this analysis, it is clear that certification is appropriate. First, it is unlikely that individual plaintiffs would have the resources to pursue their claims – especially since the claims are consistently only a few hundred dollars. As one court has noted in an identical case:

> This is precisely the kind of case that class actions were designed for, with small or statutory damages brought by impecunious plaintiffs who allege similar mistreatment by a comparatively powerful defendant, one that, if the fact alleges were proved, otherwise might get away with piecemeal highway robbery by committing small violations that were not worth the time and effort of individual plaintiffs to redress or were beyond their ability or resources to remedy.

*Mitchell-Tracey,* 237 F.R.D. at 560, *quoting Jackson v. Check 'N Go of Illinois, Inc.*, 193 F.R.D. 544, 547 (N.D. Ill. 2000)). Second, Plaintiff is not aware of any other similar litigation commenced by the putative Class members. Third, the need for efficient use of judicial resources dictates the propriety and desirability of resolving common issues in one action. *In re Cigna Corp Sec. Litig.*, 2006 WL 2433779 (E.D. Pa. Aug. 18, 2006) (certifying securities class action). Indeed, unless the Class members obtain relief through this class action, most of the class will not obtain any relief at all. There simply is no other practical means for this Class to challenge a practice which stands in clear violation of controlling law. "The desirability of providing recourse for the injured consumer who would otherwise be financially incapable of bringing suit and the deterrent value of class litigation clearly render the class action a viable and important mechanism in challenging fraud on the public." 6 NEWBERG ON CLASS ACTIONS § 21:30 (4th ed. 2003). *In re Cigna Corp Sec. Litig.*, 2006 WL 2433779 at *5.

Finally, there are no manageability issues that would preclude certification, even though the proposed Class could include thousands of members. The issue of "manageability" was recently discussed in *In Re: Visa Check/Master Money Antitrust Litigation*, 280 F.3d. 124 (2nd Cir. 2001). In that case, the Second Circuit affirmed the certification of a class which consisted

of every business in the United States, large and small, which accepted Visa and/or MasterCard credit cards. The class literally consisted of millions of businesses in all of the fifty states ranging in size from Wal-Mart to the local dry cleaner. The defendants' major challenge on appeal was on the issue of manageability. The Second Circuit first disposed of defendants' argument that individualized proof of damages should preclude certification, saying that "the fact that there may have to be individual examinations on the issue of damages has never been held, however, a bar to class actions," 280 F.3d at 139. On the general issue of manageability, the Court stated:

> [F]ailure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored, and should be the exception rather than the rule.

*Id*. at 140 (citations omitted). *See also In re Plastics Additives Antitrust Litigation*, 2006 U.S. Dist. LEXIS 69105 at * 50 (E.D. Pa. 2006) (denying certification on manageability grounds is disfavored).

In this case, there are no management issues with respect to the Class defined above. Manageability of the action is not problematic, even though the proposed Class could include thousands of Class members. The Class is comprised of Pennsylvania consumers asserting common law and statutory claims under Pennsylvania law. There are no interstate choice of law problems, or other issues necessitating subclasses or bifurcation. As detailed above, the liability questions are common and readily capable of being resolved on a class-wide basis. In particular, questions of law pertaining to the TIRBOP Rate Manual – including its binding rates and the failure of the Defendant to adhere to such binding rates – are most fairly and efficiently resolved through a class action. Litigation of the common liability issues is a straightforward matter.

The Class can be identified from the Defendant's own records, or from the records of its agents. The Defendant testified in this case that, in addition to the information gathered and

maintained by each of its agents – including, but not limited to the information contained in the title commitment – Chicago Title compiles comprehensive and detailed *electronic* information for each and every policy issued. Ms. Reimer even testified that Chicago Title's title plant could provide everything one wants to know about the property. Reimer Dep. at 116. Similarly, Chicago Title's own agent testified that title agents typically use pre-packaged title insurance programs such as Title Express, Soft-Pro and Crystal that can generate reports of completed transactions based on the information requested, such as all transactions done over a specific period of time. Rozniakowski Dep. at 68-71. As a result, delivery of any notice to the Class will not be unduly difficult; nor are there other manageability issues that will hamper the management of this case as a class action, such as any calculation of individual damages. As one Pennsylvania state court recently explained in *Lewis v. Bayer AG*:

> Problems of administration alone ordinarily should not justify the denial of an otherwise appropriate class action for to do so would contradict the policies underlying this device. Rather, the court should rely on the ingenuity and aid of counsel and upon its plenary authority to control the action to solve whatever management problems the litigation may bring.

2004 WL 1146692 *22 (C.P. Phila. Nov. 18, 2004) (citations omitted).

Not surprisingly, title insurance defendants have advanced several manageability arguments in companion state litigation in New York and Maryland. Both courts soundly and persuasively rejected them. Responding to contentions that it would be overwhelmingly difficult to identify the class and administer their claims, the New York court concluded that "this is not an insurmountable task" given that "most of the underwriters maintain databases from which they can identify completed loan transactions." *In re Coordinated Title Ins. Cases*, 2004 WL 690380 at *18. Further, the court expressed "reluctance . . . to halt the pursuit of alleged misconduct affecting a potentially very larger number of consumers because of the state of the

41

defendants' records." *Id*. Similarly, in *Mitchell-Tracey*, 237 F.R.D. at 560, a federal court also dismissed manageability arguments stating:

> It strains credulity to suggest, as Defendants do, that the Defendants (and their agents) lack the ability to compile information on insurance policies that they have issued, even if those policies have been issued by independent agents.

No less is true here. Whatever claims administration issues may later arise, they are not only surmountable but trivial in comparison to the efficiency and fairness benefits of class certification.

Recognizing that consumer class actions in general are easy to manage, and understanding that in the absence of a class action, a failure of justice will result, numerous courts have found the class action approach superior in similar cases involving common law fraud claims and claims under consumer protection statutes. *See, e.g. In Re Prudential Insurance Company America Sales Practices Litigation Agent Actions*, 148 F.3d 283 (3d Cir. 1998) (a class action is the superior method – particularly to individual suits – to the fair and efficient adjudication of claims involving a large number of persons injured by violations of consumer protection laws or common law); *Lake v. First Nationwide Bank,* 156 F.R.D. 615, 626 (E.D. Pa. 1994)(public interest in seeing that rights of consumers are vindicated favors disposition of claims in class action).

In fact, courts have long recognized that "[c]lass action certifications to enforce compliance with consumer protection laws are 'desirable and should be encouraged.'" *Watkins v. Simmons and Clark, Inc.*, 618 F.2d 398, 404 (6th Cir. 1980). Not only does class certification enable class members to share in a financial recovery which they might otherwise never pursue on their own behalf, but it also "provides an opportunity to educate a segment of the public,

those included in the class, of the obligations which creditors owe to them as credit consumers."
*Id.*

Accordingly, a class action is both manageable and far superior to that of individual claims.

### 6.    **Plaintiff's Proposed Trial Plan**

Since Plaintiff filed the Complaint in this case, a decision by the Court of Appeals in *Wachtel v. Guardian Life Insurance Co. of America*, 453 F3d. 179 (3d Cir. 2006), addressed class action jurisprudence following amendments to Rule 23 that became effective December 1, 2003.

In *Wachtel*, the Third Circuit, finding itself in "uncharted waters," *id.* at 184, considered a matter of first impression under the amendments to Rule 23 which were effective December 1, 2003. Specifically, the Court addressed the provisions of Rule 23(c)(1)(B), which states "An order certifying a class action must define the class and the class claims, issues or defenses . . . ." *Fed. R. Civ. P.* 23(c)(1)(B). The Court concluded that the plain text of Rule 23(c) as amended now:

> requires more specific and more deliberate treatment of the class issues, claims and defenses than the practice described above has usually reflected. More specifically, in our review, the proper substantive inquiry for an appellate tribunal reviewing a certification order for Rule 23(c)(1)(B) compliance is whether the precise parameters defining the class and a complete list of the claims, issues, or defenses to be treated on a class basis are readily discernible from the text either of the certification order itself or of an incorporated memorandum opinion.

*Wachtel*, 453 F.3d at 185. The Court summarized its holding as follows:

> In summary, we hold that the requirement of Rule 23(c)(1)(B) that a certification order "define the class and the class claims, issues, or defenses," means that the text of the order or an incorporated opinion must include (1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified, and (2) a readily discernible, clear, and complete list of the claims, issue or defenses to be treated on a class basis.

*Wachtel*, 453 F.3d at 187-88.

In addition, the Court of Appeals addressed the practice of submitting a "trial plan" that could be used to facilitate Rule 23(c)(1)(B) compliance. While stopping short of requiring such a plan in every case, the Court expressed its belief that the pre-certification presentation of a trial plan is "an advisable practice within the class action arena." *Id.* at 186 n.7.

Plaintiff's accompanying proposed class certification Order has been drafted to comply with the requirements of Rule 23(c)(1)(B) that the class and class claims and issues be specifically defined, in light of *Wachtel's* comment that a "sufficient certification order must, in some clear and cogent form, define the claims, issue or defenses to be treated on a class basis." 453 F.3d at 189.

Further, while a trial plan is not a mandated component of a motion for class certification, *Wachtel* considers such a plan an advisable practice. As such, Plaintiff proposes the following trial plan for the Court's consideration:

1.      Plaintiff will present her individual case.

2.      Unless a directed verdict is appropriate at the close of Plaintiff's individual presentation, the individual case will be presented to the jury for determination.

3.      Plaintiff's causes of action are for violations of the Pennsylvania Common Law and the Pennsylvania Unfair Trade Practices and Consumer Protection Law (CPL).

4.      The jury will be asked to determine whether the Defendant's standard practice of failing to provide consumers the filed rate for title insurance is in violation of the common and statutory law of Pennsylvania.

5.      If the jury returns a verdict against Plaintiff, the trial will end and judgment against Plaintiff and the class will be entered. If the jury finds for Plaintiff, the Court can render a judgment for the class based on the jury findings.

6.      Final judgment will be based upon the jury verdict.

As shown by the above, trial of this class action will be relatively simple and straightforward. The practice at issue is common to all members of the Class. A jury's review of that practice will result in a determination whether or not the Defendant violated Pennsylvania's filed rates for title insurance. Judgment can then be entered based on that verdict.

## IV.    COURTS IN FIVE DIFFERENT STATES HAVE RECENTLY CERTIFIED VIRTUALLY IDENTICAL CLASS ACTIONS

At least five different courts, in five separate states, have considered, and certified, consumer classes alleging failures to pay mandated reissue discounts. These cases present facts virtually identical to the facts alleged against Chicago Title in this case and provide clear guidance for the Court to certify this matter.

### A.    In Maryland Federal District Court, the Court Certified an Identical Title Insurance Class Action and the Fourth Circuit Declined to Review the Decision on Appeal

In *Mitchell-Tracey,* the most recent case certifying a class action against title insurers, the court certified a nearly identical claim under Maryland law to the case at bar on the grounds that the "[a]pplication of the principles embodied in Rule 23 to the circumstances of this case compels the conclusion that the class action device is wholly appropriate." 237 F.R.D. at 556. After an extensive analysis of Rule 23, the court determined that the action was maintainable: 1) under the risk of inconsistent adjudications standard (Rule 23(b)(1)); 2) under the grounds that the defendants acted or refused to act on grounds generally applicable to the class (Rule 23(b)(2)); and 3) under the grounds that the questions of law and fact predominate over any questions affection individual members of the class. Pursuant to Rule 23(f), the title insurance defendants sought interlocutory appeal of the certification order which the Fourth Circuit quickly declined to exercise.

**B.    In New York State, the Court Certified *In re Coordinated Title Insurance Cases***

In *In re Coordinated Title Insurance Cases*, 784 N.Y.S.2d 919, 2004 WL 690380 (N.Y. Sup. 2004), a group of consumers brought a series of class actions against 8 title insurers arguing, like this case, "that defendants routinely collected premiums in excess of that to which they were legally entitled in connection with refinance transactions." *Id.* at *1. After discussing the nefarious nature of the title insurance industry as a whole, and the fact that title insurance premiums result in almost pure profit for the insurers – noting in particular that "[n]ews reports indicate that title insurers pay out 47 cents for every $10 collected," *id.* – the court certified the class.

A key consideration for the New York court was the fact that "the failure of the defendants to charge the mandated, discounted premium for a refinance was the result of routine, material omissions." *Id.* at *3. Plaintiff supported the allegation in this regard with deposition testimony of representatives of the defendant title insurance companies. That testimony – much like the unambiguous deposition testimony of Chicago Title in this case – suggested that the insurers did not conduct the proper oversight and did not have a general practice, policy or procedure to disclose "the potential availability of the mandated discount to qualified re-financiers." *Id.*

**C.    In Ohio, the Appellate Court Recently Reversed the Denial of Class Certification**

In *Dubin v. Security Title Insurance Co.*, 832 N.E.2d 815 (Ohio 2005), the Ohio Court of Appeals recently reversed the trial court's denial of certification in another action alleging that the defendant insurers had failed to apply the proper discounted premium rate for lender's title insurance.

**D.     The Minnesota Courts, as Well, Certified an Identical Class Action**

Like the Maryland, New York and Ohio class certification decisions, the Minnesota court in *Mitchell v. Chicago Title Ins. Co.*, 2003 WL 23786983 (Minn. Dist. Ct. Dec. 22, 2003), certified a class of borrowers who were denied the applicable reissue rate.  In so doing, the court considered the fact that the defendant insurer, as in this case, had at its disposal much of the information on prior policies necessary to raise a significant presumption of entitlement to the discounted rate, but chose to ignore that information.  "Plaintiffs' lawsuit will focus not upon whether persons were given proper notice of the reissue rate, but more on what information *Chicago Title* had available to it and whether, assuming the existence of that information, *Chicago Title* should have applied the discount without the suggestion of its customers." *Id.* at *6 (emphasis in original).

Moreover, the alternative to certification, the Minnesota court observed – where each class member would be forced to start his own lawsuit – was not preferred; individual class members are unlikely to bring lawsuits over such relatively small amounts of money.

**E.     A Pennsylvania State Court Has Certified Identical Claims Against a Title Insurance Company**

In *Cummings v. Express Financial Services, LLC et. al.,* March Term 2005, No. 747 (C.P. Phila.), the Court of Common Pleas recently certified a class action against Stewart Title Guaranty Company for the same conduct alleged in this action under Pennsylvania's class action rules.

**V.     CONCLUSION**

This case raises important factual and legal issues for thousands of consumers, issues which are common to all.  Ms. Cohen, the proposed Representative Plaintiff, shares all of these claims and is committed to bringing them forward to a resolution on behalf of all class members.

The only practical method for adjudicating this case is through class certification. The Court should certify the defined Class as proposed.

Dated:  December 4, 2006                     Respectfully submitted,

                                             **DONOVAN SEARLES, LLC**


                                             *s/ David A. Searles*_____
                                             David A. Searles
                                             1845 Walnut Street, Suite 1100
                                             Philadelphia, PA 19103
                                             (215) 732-6067

                                             Philip S. Friedman
                                             FRIEDMAN LAW OFFICES, PLLC
                                             2401 Pennsylvania Avenue, N.W., Suite 410
                                             Washington, D.C. 20037
                                             (202) 293-4175

                                             Richard S. Gordon
                                             QUINN, GORDON & WOLF, CHTD.
                                             102 W. Pennsylvania Ave., Ste 402
                                             Towson, Maryland 21204
                                             (410) 825-2300

## CERTIFICATE OF SERVICE

I hereby certify that on the date below I served a copy of the foregoing on the following person via electronic mail:

Darryl J. May, Esq.
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599

*s/ David A. Searles*
David A. Searles

DATED:  December 4, 2006