IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PEARL E. COHEN, | : | CIVIL ACTION |
| *ON BEHALF OF HERSELF AND ALL* | : | |
| *OTHERS SIMILARLY SITUATED* | : | No. 06-873 |
| | : | |
| v. | : | |
| | : | |
| CHICAGO TITLE INSURANCE COMPANY | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                            **March 7, 2013**

      Plaintiff Pearl E. Cohen brings this suit on behalf of herself and similarly situated class members against Chicago Title Insurance Company (Chicago) alleging Chicago overcharged her and the other class members for title insurance they obtained in refinancing their mortgages. At the parties' request, this case was placed in suspense pending the Pennsylvania Supreme Court's review of *White v. Conestoga Title Insurance Co.*, 982 A.2d 997 (Pa. Super. Ct. 2009). Following the issuance of the decision, the case was removed from suspense. Chicago filed a renewed motion to decertify the class. Cohen filed a motion for partial summary judgment. For the following reasons, this Court will grant Chicago's motion to decertify the class and deny Cohen's motion for partial summary judgment.

**FACTS**[1]

      Chicago is a title insurance provider. Title insurance guarantees the purchaser of a parcel of property owns the property free and clear of all liens and encumbrances except as specifically disclosed in the title insurance policy. All title insurers providing such insurance in Pennsylvania, including Chicago, are governed by the Pennsylvania Title Insurance Companies

---

[1] The Court recites the parties' undisputed facts from Cohen's and Chicago's statements of facts submitted in support of and in opposition to Cohen's motion for partial summary judgment.

Act, 40 Pa. Stat. Ann. § 910-1 *et seq.*, which regulates title insurers and the rates they may charge for title insurance policies. The statute requires title insurers to either (1) file their own individual proposed rate with the Insurance Commissioner, *id.* § 910-37(a); or (2) elect to become a member of a rating organization that files proposed rates on behalf of all members of the organization, *id.* § 910-37(b).

Chicago issues two kinds of title insurance policies, owner's policies and lender's policies. When a consumer buys real property in Pennsylvania, the consumer typically purchases an owner's title insurance policy. The lender's policy insures the lender/mortgagee and protects the lender's security interest in the property. It usually provides coverage in the amount equal to the secured loan. Chicago is a member of the Title Insurance Rating Bureau of Pennsylvania (TIRBOP). TIRBOP submits its proposed rates to the Insurance Commissioner for approval. The approved rates and regulations governing how the rates are applied are set forth in the Manual of Title Insurance Rating (Rate Manual). The Rate Manual contains the rates that TIRBOP members must be charged, and it is unlawful not to charge customers such rates.

There are three different rate tiers: (1) the basic rate, (2) the reissue rate, which is 90% of the basic rate, and (3) the refinance rate, which is 80% of the reissue rate.[2] The basic rate is the default rate charged to consumers. The reissue and refinance rates are discounted rates given to a purchaser when only a few years have passed since the issuance of a title insurance policy.

---

[2] The refinance provision in the Rate Manual, which both Cohen and Chicago submitted to the Court, states in relevant part:

> When a refinance or substitution loan is made within 3 years from the date of closing of a previously insured mortgage or fee interest and the premises to be insured are identical to or part of the real property previously insured and there has been no change in the fee simple ownership, the Charge shall be 80% of the reissue rate.

Def.'s Br. in Opp'n. Ex. B, "Rate Manual," Section 5.6.

2

In 2002, Cohen and her husband decided to refinance their home. They had previously obtained three loans secured by mortgages on their property located at 130 West Pomona Street, Philadelphia: (1) a loan from the Department of Housing and Urban Development in the amount of $8,900, recorded on September 10, 1969; (2) a loan from Class Exteriors in the amount of $18,868, recorded on November 14, 1997; and (3) a loan from Capstone Mortgage Corporation in the amount of $44,175, recorded on March 19, 1999.

As a part of the refinancing, Cohen's lender requested that she purchase a lender's title insurance policy. Cohen sought title insurance from Chicago through its agent, Chelsea Land Transfer, Inc. (Chelsea), which provided the closing and settlement services to Cohen. Maria Rozniakowski, an employee of Chelsea, handled Cohen's transaction. Chelsea issued a lender's title insurer policy on behalf of Chicago to Cohen with a face value of $57,600. At closing, Cohen signed the settlement sheet, known as the HUD-1. Line 1108 of Cohen's HUD-1 stated Chicago charged Cohen $606.75, the basic rate, for the lender's policy. Cohen argues she was overcharged because she had bought title insurance within the previous three years and was thus entitled to the refinance rate.

On January 27, 2006, Cohen filed a suit in the Philadelphia Court of Common Pleas against Chicago asserting the following causes of action: (1) money had and received; (2) "unjust enrichment/account/disgorgement/restitution"; and (3) violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL). On February 28, 2006, Chicago removed the case to this Court. On December 4, 2006, Cohen filed a motion for class certification. On April 9, 2007, this Court issued a Memorandum and Order certifying the following class:

> All persons or entities in the Commonwealth of Pennsylvania who within 10 years of having previously purchased title insurance in connection with their mortgages

or fee interests, refinanced the identical mortgage or fee interest, and were charged a title insurance premium by Chicago Title that did not include the applicable premium discount for title insurance on file with the Pennsylvania Insurance Commissioner.

Order filed April 9, 2007, ECF No. 38. On February 2, 2009, this Court denied Chicago's motion to decertify the class as to the UTPCPL claim without prejudice to its reassertion prior to trial. ECF No. 78.

On July 15, 2010, following an oral argument, this Court granted the parties' joint motion to stay the case pending the Pennsylvania Supreme Court's review of *White v. Conestoga Title Insurance Company*, 982 A.2d 997 (Pa. Super. Ct. 2009). The case was thereafter placed in suspense. The Supreme Court issued its decision in *White* in August 2012. After the case was removed from suspense, Chicago filed a renewed motion to decertify the class. Cohen filed a motion for partial summary judgment as to liability. Cohen's only remaining claim is her claim pursuant to the "catch-all" provision of the UTPCPL, 73 Pa. Stat. Ann. §§ 201-9.2, 201-2(4)(xxi).[3]

**DISCUSSION**

    **A.    Chicago's Motion to Decertify the Class**

Under Federal Rule of Civil Procedure 23(c)(1)(C), "an order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). "Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Chicago moves to decertify the class based on intervening case law clarifying the

---

[3] It appears Cohen is no longer pursuing her common law claims of money had and received and unjust enrichment. Cohen does not move for summary judgment as to those common law claims.

4

elements of a UTPCPL catch-all claim, as well as changes in the legal landscape pertaining to class actions.

The UTPCPL provides a person who "purchases or leases goods or services primarily for personal, family or household purposes" and suffers an ascertainable loss as a result of the use or employment by any person of a method, act, or practice declared unlawful by the statute may bring a private cause of action to recover damages. 73 Pa. Stat. Ann. § 201-9.2. The statute prohibits a range of unfair and deceptive practices, including a catch-all provision, which prohibits "fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." *Id.* § 201-2(4)(xxi). To succeed on a claim under this provision, "a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Yocca v. Pittsburgh Steelers Sports., Inc.*, 854 A.2d 425, 438 (Pa. 2004) (citations omitted).

Chicago argues decertification is warranted in light of the Third Circuit's holding in *Hunt v. United States Tobacco Company*, 538 F.3d 217 (3d Cir. 2008), a decision issued after this Court certified the class in the instant case. In *Hunt*, the Court held the Pennsylvania Supreme Court has "categorically and repeatedly stated that, due to the causation requirement in the Consumer Protection Law's standing provision, 73 Pa. Stat. Ann. § 201-9.2(a) (permitting suit by private plaintiffs who suffer loss 'as a result of' the defendant's deception), a private plaintiff pursuing a claim under the statute must prove justifiable reliance." *Hunt*, 538 F.3d at 221. In addition, the Court held reliance generally cannot be presumed. *Id.* at 227.

The Third Circuit noted the Superior Court has recognized a narrow exception to this rule, allowing a presumption of reliance when the parties are in a fiduciary relationship. *See Hunt*, 538 F.3d at 227 n.17 (citing *Debbs v. Chrysler Corp.*, 810 A.2d 137, 157 (Pa. Super. Ct.

5

2002)). A fiduciary relationship exists where "one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side or weakness, dependence or justifiable trust, on the other." *In re Johnson*, 292 B.R. 821, 828 (Bankr. E.D. Pa. 2003) (citation omitted). Generally, in Pennsylvania, insurers do not owe a fiduciary duty to their insureds. *Allen-Wright v. Allstate Ins. Co.,* No. 07-4087, 2008 WL 5336701, at *6 (quoting *Smith v. Berg.*, No. 99-2133, 2000 WL 365949, at *14-15 (E.D. Pa. Apr. 10, 2000)). Pennsylvania law is clear that "the relationship between the insurance agent and the purchaser reflects 'the quintessential arm's-length relationship, that of seller and buyer, . . . rather than a confidential relationship." *In re Glauser*, 365 B.R. 531, 537 (Bankr. E.D. Pa. 2007) (citation omitted); *see Contawe v. Crescent Heights of Am. Inc.,* No. 04-2304, 2004 WL 2244538, at *5 (E.D. Pa. Oct. 1, 2004) ("Plaintiffs' claim fails because Pennsylvania does not, absent special or unusual facts, recognize a fiduciary relationship between a title insurance agent and a purchaser of real estate." (citing *In re Johnson*, 292 B.R. at 828)).

The holding in *Hunt* creates a difficult obstacle for a plaintiff pursuing a class action based on the UTPCPL's catch-all provision. One of the prerequisites for class action certification is that there are questions of law or fact common to the class. *See* Fed. R. Civ. P. 23(a)(2). In addition, Rule 23(b)(3) requires common questions of law or fact predominate over any question affecting only individual members. Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Whether a plaintiff's reliance on a defendant's deceptive conduct was justifiable is "'typically a question of fact for the fact-finder to decide, and requires a consideration of the parties, their

6

relationship, and the circumstances surrounding their transaction.'" *Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542, 548-49 (E.D. Pa. 2012) (citation omitted). Thus, numerous courts have not certified or have decertified classes pursuing UTPCPL claims, finding the justifiable reliance requirement makes individual issues predominate over issues common to the class.[4]

Chicago argues this Court should decertify the class based on the *Hunt* decision and because the class previously certified does not meet all of the requirements of a class action. Chicago argues Cohen must demonstrate she, as well as each of the class members, justifiably relied on a HUD-1 containing a misrepresentation of the title insurance rate. Chicago contends there was no misrepresentation, as line 1108 of Cohen's HUD-1 simply stated what Cohen actually paid for the insurance, not what she should have paid. Chicago claims the Court would need to determine whether each class member read line 1108 of the HUD-1 and relied on it, and asserts these individual inquiries predominate over class issues. Also, Chicago argues Cohen cannot rely on the limited exception to the requirement to prove justifiable reliance because it did not have a fiduciary relationship with Cohen or the class members. Even if the Court were to find such relationships may have existed, the Court would be required to engage in individualized inquiries to determine if such a relationship did in fact exist. Furthermore,

---

[4] *See Lewis v. Ford Motor Co.*, 263 F.R.D. 252, 264 (W.D. Pa. 2009) (denying class certification in a UTPCPL action because "each class member would have to show not only justifiable reliance but also loss as a result of that reliance, aspects subject to individual, rather than common questions of law or fact," and concluding "that such lack of commonality renders this case unsuitable for class treatment"); *Kondratick v. Beneficial Consumer Disc. Co.*, No. 04-4895, 2006 WL 305399, at *7 (E.D. Pa. Feb. 8, 2006) (holding an "unfair trade practices claim under UTPCPL cannot be certified for class treatment because UTPCPL claims require an individualized examination of reliance, causation, and damages"); *Dawson v. Dovenmuehle Mortg., Inc.*, 214 F.R.D. 196, 201 (E.D. Pa. 2003) ("Because reliance is an essential element that must be proven in UTPCPL claims and other state consumer fraud claims, the court finds that individual questions of law and fact predominate over any common questions with respect to the pending claim, thereby precluding class certification pursuant to Rule 23(b)(3)."); *Debbs*, 810 A.2d at 158 ("[T]he trial court erred when it concluded that the commonality requirement was met because common law fraud and fraud under UTPCPL require an individualized showing of reliance on a fraudulent statement.").

Chicago submits the Court would have to determine whether each member was entitled to the reissue or refinance discounted rate on a case-by-case basis. The currently defined class includes individuals who obtained reissue or refinance rates based on different Rate Manuals.

Cohen opposes decertification of the class, arguing individual issues do not predominate over class-wide issues. Cohen argues *Hunt* provides no basis for decertifying the class, because *Hunt* is factually different and does not require justifiable reliance in every case. Cohen further contends the UTPCPL does not require proof of common law fraud, which includes an element of justifiable reliance. However, even if justifiable reliance is required, Cohen argues she and the class members may demonstrate such reliance based on the representations in the HUD-1. Cohen argues Chicago engaged in deceptive conduct when it presented consumers with purportedly correct and lawful rates under the Rate Manual which were in fact overcharges. Cohen argues the HUD-1 was prepared by a Chicago agent and required in every transaction. The common question among the class members is whether Chicago engaged in "deceptive conduct" by not disclosing the discounted rates.

Cohen also argues reliance may be presumed under the circumstances in this case. She maintains her and the class members' reliance on the representations in the HUD-1 can be "easily inferred," and may be presumed because the class members are in a confidential/special relationship with Chicago. With respect to each class member's entitlement to discounted rates, she also argues if the Rate Manual is ambiguous as to who was entitled to a discount, then the rates and regulations should be construed in favor of the insured.

The Court finds Cohen cannot maintain a class action for a violation of the UTPCPL's catch-all provision because the need to show justifiable reliance on Chicago's deceptive conduct renders such claims unsuitable for class treatment. Justifiable reliance requires an individual

inquiry into each of the class member's transactions with Chicago. The individual questions of justifiable reliance, misrepresentation, and entitlement of a discount would be questions of both law and fact affecting individual class members, which would predominate over the issues common to the class. Therefore, the Court will decertify the class.

Cohen's argument that *Hunt* does not impose a requirement that a plaintiff prove justifiable reliance to successfully assert a UTPCPL catch-all claim is inaccurate, as the Third Circuit in *Hunt* explicitly stated such a requirement. *Hunt*, 538 F.3d at 227. Cohen relies on two cases, *Slapikas v. First American Title Insurance Co.*, No. 06-84, 2010 WL 3222129 (W.D. Pa. Aug. 13, 2010) and *Markocki v. Old Republic National Title Insurance Co.*, 254 F.R.D. 242 (E.D. Pa. 2008), in support of her argument that reliance may be presumed or inferred based on the circumstances in this case. In particular, Cohen argues a consumer would reasonably expect to be charged a lawful rate and would not elect to pay a hire charge had they known about the discount. However *Slapikas* and *Markocki* did not discuss justifiable reliance or *Hunt*, thus this Court does not find them persuasive.[5]

Cohen also claims Chicago maintained a fiduciary relationship with her by assuming "overmastering influence" over the title insurance transaction, through use of its standardized HUD-1 and maintains she had no role or input in the process until the closing. This alone does not demonstrate that there was a fiduciary relationship. *See Allen-Wright*, 2008 WL 5336701, at *7. Further, determining whether the class members had a fiduciary relationship with Chicago

---

[5] On March 5, 2013, Cohen also submitted a "Notice of Supplemental Authority" citing a United States Supreme Court case *Amgen Incorporated v. Connecticut Retirement Plans and Trust Funds*, __ S. Ct. __, 2013 WL 691001 (2013). She argues the case is relevant to Chicago's motion to decertify the class. However, *Amgen* involves a securities case where reliance may be presumed. Such securities cases were considered by the Court in *Hunt*, and the Court found the presumption of reliance in such securities cases is inapplicable in UTPCPL cases. *Hunt*, 538 F.3d at 228. Similarly, this Court rejects this supplemental authority and its application to the present class decertification motion.

would also involve individual inquiries and demonstrates lack of commonality and predominance.

The Court notes the suitability of giving class treatment to these types of cases. *See Corwin v. Lawyers Title Ins. Co.*, 276 F.R.D. 484, 490 (E.D. Mich. 2011) ("Certainly, because of the small amounts of damages involved in each overcharged transaction, class treatment of the claims might otherwise be appropriate. However, 'because the [plaintiff has] defined the class and presented [her] claim in a manner that requires substantial, individual inquiries,' . . . class issues cannot predominate when the resolution of those common issues in the plaintiff's favor could not result in a finding of liability against the defendant on a classwide basis."). However, this Court is constrained by the Third Circuit's holding in *Hunt* that a plaintiff pursuing a claim under the UTPCPL catch-all provision must show justifiable reliance. Because this requirement causes individual issues to predominate over issues common to the class, the Court will decertify the class.[6]

### B. Cohen's Motion for Partial Summary Judgment

Cohen moves for partial summary judgment as to liability.[7] A court may grant summary judgment where the moving party demonstrates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[6] Cohen also requested the Court appoint a special master to determine the actual damages suffered by the class members. In light of the Court's ruling in decertifying the class, this request will be denied as moot.

[7] On a motion for summary judgment, a district court must view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor." *See Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Marzano v. Computer Sci. Corp.*, 91 F.3d 497, 501 (3d Cir. 1996)).

242, 248 (1986). The moving party bears the burden of proving no genuine issue of material fact is in dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The court must draw all reasonable inferences in favor of the party opposing the motion. *Id.* at 587. "[T]he non-moving party must present more than a mere scintilla of evidence; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Burton v. Teleflex Inc.*, No. 11-3752, 2013 WL 616973, at *4 (3d Cir. Feb. 20, 2013) (quoting *Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007)).

Cohen argues the HUD-1 contained all the necessary information which entitled her to a discounted refinance rate, yet Chicago charged her the basic rate. She argues she demonstrated justifiable reliance in the purchase of the insurance policy and reliance on the legitimacy of the title insurance process. Chicago breached the implied contract it had with every consumer to charge the correct rate. She relied on written representations in the HUD-1, which states all of the verifications in the document were "true and accurate." She also argues reliance may be presumed through a fiduciary relationship, as Chicago assumed "overmastering influence" during the entire title insurance transaction. Accordingly, she claims she can satisfy all of the elements of the UTPCPL claim and this Court should grant summary judgment in her favor.

Chicago argues Cohen has not proven justifiable reliance. There is no evidence she read line 1108 of the HUD-1 or that she relied on it. Furthermore, reliance may not be presumed. Alternatively, Chicago contends Cohen was not entitled to a discount rate and properly charged the basic rate. The Rate Manual in effect at the time of the transaction required the borrower to provide evidence of a prior insurance policy in order to receive a discounted rate. Chicago argues, because Cohen did not provide such evidence to the title agent, she was not entitled to the discounted rate.

11

As stated above, justifiable reliance is a required element of a UTPCPL claim, *Hunt*, 538 F.3d at 221, and it cannot be presumed, *id.* at 227. "To show justifiable reliance a plaintiff must provide evidence demonstrating how his knowledge of a mortgage loan's actual terms would have altered his decision to execute the mortgage." *Laidley v. Johnson*, No. 09-395, 2011 WL 2784807, at *3 (E.D. Pa. July 11, 2011). "'[J]ustifiable reliance is typically a question of fact for the fact-finder to decide, and requires a consideration of the parties, their relationship, and the circumstances surrounding their transaction.'" *Levine v. First Am. Title Ins. Co.*, 682 F. Supp. 2d 442, 467 (E.D. Pa. 2010) (quoting *Toy v. Metro. Life Ins. Co.,* 928 A.2d 186, 208 (Pa. Super. Ct. 2007).

Cohen has not presented the Court with any evidence that she relied on the HUD-1 other than asserting general and conclusory arguments that the purchase of the title insurance demonstrates reliance or that a consumer would expect to receive an entitled discounted rate and be charged accordingly. In support of her argument, she cites cases that have addressed these principals in the contexts of motions to dismiss or motions granting class certification. As Cohen's case is at a motion for partial summary judgment stage, she fails to provide the court with sufficient evidence that she justifiably relied on the contents of the HUD-1 such that she would have acted differently had she known of the overcharge. *See Hunt*, 538 F.3d at 227. Furthermore, this factual determination is typically left to the finder of fact, which makes this case inappropriate for summary judgment.[8] Thus, Cohen's motion will be denied.

An appropriate Order follows.

---

[8] The Court will defer its ruling on Chicago's alternative argument based on the interpretation and application of the different Rate Manuals.

12

BY THE COURT:


   <u>/s/ Juan R. Sánchez</u>
Juan R. Sánchez, J.